IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JENNIFER HILL, on behalf herself and all other
persons similarly situated,

      Plaintiffs,                        CASE NO.: 1:06-CV-00096-SPM-AK

vs.

THE HOOVER COMPANY and
HOOVER COMPANY, I, Foreign Corporations
doing business in Alachua County, Florida,

      Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND AND MEMORANDUM OF LAW**

COMES NOW the Plaintiff in the above-styled action on behalf of herself and all others similarly situated, by and through her attorney of record, and hereby replies to Defendant's Response to her Motion to Remand this case back to state court, and in support thereof states:

Since Plaintiff filed her motion for remand, this Court held, in *Jones vs. Ft. Dodge Animal Health*, Case No. 1:06cv47-SPM/AK (N.D.Fla. July 6, 2006) that CAFA simply does not apply to a case filed prior to its effective date because Florida law expressly provides that commencement of a case begins with the filing of a complaint, without regard to timely service. This is consistent with the holding in *Caldwell vs. Martin Marietta Corporation*, 632 F.2d 1184 (5th Cir. (Fla.) 1980).

Defendants do not adequately explain why, given these facts, CAFA should somehow apply to Hoover I, a corporate alter ego or "sibling corporation", when Hoover I was added as a Defendant

in this case prior to service of the complaint, as is Plaintiff's right under the Florida Rules of Civil Procedure, and both Defendants were served at the same time.

Moreover, Florida law has consistently held, as Defendants point out, that the addition of a "corporate sibling" relates back to the date of the original pleading. *Williams vs. Avery Development Co-Boca Raton*, 910 So.2d 851 (Fla. 4th D.C.A. 2005) (relation back rule is to be liberally construed and does allow the addition of a new party if the new party is sufficiently related to an original party such that the addition would not prejudice the new party). The relationship or identity of interest necessary to permit a relation back for statute of limitations purposes when a new party is added is manifested in such circumstances as when the companies: (1) operate out of a single office; (2) share a single telephone line; (3) have overlapping officers and directors; (4) share consolidated financial statements and registration statements; (5) share the same attorney; and (6) receive service of process through the same individual at the same location. Id.

In this case, the Defendants held themselves out to the public under an identical name (Hoover Corporation), operated out of a single office (See Exhibits A and B), share consolidated financial statements (See the attached page from the SEC filing of Maytag, Inc., its parent corporation (Exhibit C)), are represented by the same attorney, and received service of process through the same individual. Virtually every one of the factors through is met for relation back of this Defendant. Florida courts have applied the "relation-back" doctrine when far fewer of these factors have been met.[1]

---

[1] See, e.g. *Roback vs. Cassaro*, 837 So.2d 1061 (Fla. th D.C.A. 2003) (owner shared identity of interest with rental car company, and thus trial court was required to apply the six factors indicating identity of interest in the Schwartz test before dismissing action against owner, even though the plaintiffs were on notice that they may have sued the incorrect party; plaintiffs asserted that defendants were covered by the same self-insured certificate, had some of the same board members, were represented by the same firm, accepted service through the same party, handled their claims through the same claims office, and worked out of the same rental car offices.); *Schwartz v. Wilt Chamberlain's of Boca Raton, Ltd.*, 725 So.2d 451 (Fla. 4th DCA 1999) (amendment naming new defendants and rectifying mistake concerning correct identity of corporation which operated restaurant at which plaintiff was assaulted related back to original complaint, as substantial identities of interest existed between original defendant

Defendants cite *Knudson vs. Liberty Mutual Ins. Co.*, 411 F.3d 805 (7th Cir. (Ill.) 2005) in support of the proposition that "adding a suit against a 'corporate sibling' could afford the newly added corporation a right to remove under CAFA because a suit against it would have commenced after February 18, 2005." This is a mischaracterization of the court'general and somewhat ambiguous statement, which does not really rise to the level of dicta, as no corporate sibling was a party to the case.[2] The court stated:

> Liberty Mutual paints a picture of crafty lawyers tending a garden of pre-2005 class actions, in which they plant new claims by amendment so that the 2005 Act never comes into play. As we have already hinted, however, a new claim for relief (a new "cause of action" in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes. Removal practice recognizes this point: an amendment to the pleadings that adds a claim under federal law (where only state claims had been framed before), or adds a new defendant, opens a new window of removal. 28 U.S.C. § 1446(b). See Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14C Federal Practice & Procedure § 3732 at 311-48 (3d ed.1998). We imagine, though we need not hold, that a similar approach will apply under the 2005 Act, perhaps modeled on Fed.R.Civ.P. 15(c), which

---

and new defendants, which had similar names; same person was president of original defendant and new defendant, which was the general partner of third defendant, all three received service of process through same registered agent at same office and address, all three were represented by same attorney, and new defendants had early knowledge of litigation; *Kozich*, 702 So.2d at 1289, *Schachner v. Sandler*, 616 So.2d 166 (Fla. 4th DCA 1993)

[2]The issue in *Knudson* was whether a new class definition, not a new defendant, commenced a new cause of action to which CAFA would apply.

specifies when a claim relates back to the original complaint (and hence is treated as part of the original suit) and when it is sufficiently independent of the original contentions that it must be treated as fresh litigation. See also Schiavone v. Fortune, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986); Arendt v. Vetta Sports, Inc., 99 F.3d 231 (7th Cir.1996). This possibility does Liberty Mutual no good, however, because the change in class definition does not present a novel claim for relief or add a new party. Id. at 807.

The law is well-settled that under CAFA, commencement of a state court action occurs when the action originated in state court, as defined by state law. *Ft. Dodge*, *supra*, citing *Pritchett vs. Office Depot*, 404 F.3d 1232, 1234 (10th Cir. 2005); *Pfizer vs. Lott*, 417 F.3d 725, 726-27 (7th Cir. 2005); *Bush vs. Cheapickets, Inc.*, 425 F.3d 683, 686 (9th Cir. 2005); see also *Eufaula Drugs, Inc. v. Scipsolutions*, 2005 WL 2465746, at *2-*4 (M.D.Ala. Oct.6, 2005). Secondly, the court in *Knudson* did not expressly disagree with this principle as it seemed to be making a general statement or prediction of how courts would treat the addition of new Defendants under CAFA. Moreover, although Liberty Mutual was a corporate sibling, the court did not address corporate siblings *per se* when it made these general statements, as the corporate sibling in *Knudson* was not a party to the case.[3]

All of the other cases, both state and federal, cited in Defendant's response are distinguishable because they involved unrelated defendants, not "corporate siblings" or alter egos.

---

[3]Other courts have expressly repudiated the Seventh Circuit's statements in *Knudson*.and reaffirmed that state law controls as to relation back for removal purposes. See, e.g. *Primecare of Northeast Kansas LLC. vs. Humana Insurance Co., Inc.*, 447 F.3d 1284 (10th Cir. 2006) (amendment to class action complaint filed after effective date of Class Action Fairness Act (CAFA) affects commencement date of action, and thus triggers substantive right of removal under CAFA, only if it does not relate back to initial filing date, regardless of whether amendment adds new defendant); *Eufaula Drugs*, *supra*.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand should be granted.

Respectfully submitted,

Date: September 15th 2006

s/Paul S. Rothstein
Paul S. Rothstein, Esquire
Florida Bar No.: 310123
626 NE 1st Street
Gainesville FL 32601
(352) 376-7650
(352) 374-7133 Fax

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on September 15th, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

KEVIN J CARROLL
AUSLEY & MCMULLEN - TALLAHASSEE FL
227 S CALHOUN ST
PO BOX 391
TALLAHASSEE, FL 32302
850-224-9115
Fax: 850-222-7560
Email: kcarroll@ausley.com

                                              s/Paul S. Rothstein
                                              Paul S. Rothstein, Esquire
                                              Florida Bar No.: 310123
                                              626 NE 1st Street
                                              Gainesville FL 32601
                                              (352) 376-7650
                                              (352) 374-7133 Fax

                                              Attorney for Plaintiff

Doc ID --> 200100600676

DEC-22-2000  14:12          CT CORPORATION                      13127500660      P.02/03



Prescribed by **J. Kenneth Blackwell**
Please obtain fee amount and mailing instructions from the Forms Inventory List (using the 3 digit form # located at the bottom of this form). To obtain the Forms Inventory List or for assistance, please call Customer Service:
Central Ohio: (614) 466-3910   Toll Free: 1-877-SOS-FILE (1-877-767-3453)

Expedite this form
☐ Yes

## APPLICATION FOR FOREIGN LIMITED PARTNERSHIP REGISTRATION

The undersigned, desiring to register a foreign limited partnership in accordance with Ohio Revised Code Section 1782.49, hereby states as follows:

1. The name of the foreign limited partnership is
   The Hoover Company I L.P.

2. The foreign limited partnership was formed on  12/21/00
   under the laws of the state/country of  Delaware

3. The foreign limited partnership hereby appoints the following as its agent upon whom process against the foreign limited partnership may be served in the State of Ohio. The name and complete address of the agent is:

   C T CORPORATION SYSTEM                    1300 East 9th Street
          (name)                                 (street and number)

   Cleveland                          , Ohio    44114
       (city, village or township)                  (zip code)

4. The foreign limited partnership irrevocably consents to service of process on the agent listed above as long as the authority of the agent continues, and to service of process upon the OHIO SECRETARY OF STATE if:

   a. the agent cannot be found, or
   b. the foreign limited partnership fails to designate another agent when required to do so, or
   c. the limited liability company's registration to do business in Ohio expires or is cancelled.

5. The address of the foreign limited partnership in the state or country of formation is:

   1209 ORANGE STREET                   WILMINGTON
       (street and number)                 (city, village or township)

   DELAWARE                             19801
       (state or country)                  (zip code)
   (If the foreign limited partnership is not required to maintain an office in its state of formation, please indicate this fact in this space)

6. The address of the foreign limited partnership's principal office is:

   101 East Maple St.                   North Canton
       (street and number)                 (city, village or township)

   Ohio                                 44720
       (state or country)                  (zip code)

104-LPF
OHSOS - 8/10/00 CT System Online

Page 1 of 2

Version: 7/15/99



EXHIBIT
A

Page 2

Case 1:06-cv-00096-SPM-GRJ   Document 12   Filed 09/15/06   Page 8 of 10
Case 1:06-cv-00096-SPM-AK   Document 10   Filed 09/15/2006   Page 12 of 14

Doc ID -->     6103_1566



Prescribed by
Bob Taft, Secretary of State
30 East Broad Street, 14th Floor
Columbus, Ohio 43266-0418

06103-1568

9704038440l
97N

| License No. | 758322 |
|---|---|
| Approved | KL |
| Date | 4-3-97 |
| Fee ($10 min.) | 10.00 |

## ANNUAL STATEMENT OF PROPORTION OF CAPITAL STOCK
Section 1703.07 Ohio Revised Code

**1997 FORM 7**
(year)

THE HOOVER COMPANY _____ a corporation organized under the laws of the State of

DELAWARE _____ with its principal office outside Ohio located at

| Street Address | City | State | Zip Code |
|---|---|---|---|

and its Ohio office located at  101 EAST MAPLE STREET    NO CANTON    OH    44720
                                           Street Address                    City                          Zip Code

hereby makes the following statement:

1 Corporation holds Ohio license No. 758322 issued on 10-4-89

2 This report is made as of 12-28-96 and is the ending date of the corporations accounting period and reflects the business transacted in the previous year. (See instruction 3 on reverse side.)

3. The book value (exclude goodwill) of Ohio assets is     151,254,541

4. Total business transacted in Ohio last year was     44,711,705

    Sum of 3 and 4     195,966,246

5. The book value (exclude goodwill) of all assets is     347,132,162

6. Total business transacted last year was     639,661,427

    Sum of 5 and 6     986,793,589

| For Office Use Only | |
|---|---|
| Issued shares | |
| Decimal | |
| Present Prop. | 199 |
| Prior Prop. | 222 |
| Increase | |
| Fee Due | |
| Penalty(15%) | |
| Total | |

7. a. Number of authorized shares   1,000

    b. Number of issued shares   1,000

8. The name and address to whom statements of fees due may be mailed is (See instruction 6 on reverse side):

THE HOOVER COMPANY c/o MAYTAG CORPORATION  403 W 4TH ST N   NEWTON, IA  50208
(Must be a complete street address, including zip code.)

### NOTARIZATION

State of IOWA             County of JASPER

I, DAVID D. URBANI, being duly sworn, state that I am the

[ ] President    [ ] Vice President    [ ] Secretary    [X] Treasurer

of THE HOOVER COMPANY             (Name of Corporation)

and that the foregoing statements are true and correct to the best of my knowledge and belief.

SWORN TO AND SUBSCRIBED IN MY PRESENCE

THIS 26 DAY OF MARCH 19 97

_(signature)_

Brenda S. Engen
(signature of notary)

NOTARY SEAL      My commission expires 5-22-99

INSTRUCTIONS ON REVERSE SIDE

ANNCST

EXHIBIT B

Page 3



# FORM 10-K

## MAYTAG CORP – MYG

**Filed: February 10, 2006 (period: December 31, 2005)**

Annual report which provides a comprehensive overview of the company for the past year



EXHIBIT C

Table of Contents

PART I

### Item 1. Business

We are a leading manufacturer and distributor of home and commercial appliances Our products are sold to customers throughout North America and in international markets We were organized as a Delaware corporation in 1925.

We are one of the leading major appliance companies in the North American market, offering consumers a full line of washers, dryers, dishwashers, cooking appliances, and refrigeration distributed through large and small retailers across the United States and Canada We also sell product to commercial laundry customers Our Hoover brand is a leader in North American floor care products In addition, we have an extensive service network offering repair, parts and accessories, service management and extended service contracts for our home appliances as well as home appliances sold by other manufacturers

We own Dixie-Narco, one of the original brand names in the vending machine industry, and currently the leading manufacturer of soft drink can and bottle vending machines in the United States. Dixie-Narco venders are sold primarily to major soft drink bottlers such as Coca-Cola Enterprises and Pepsi Bottling Group

In commercial cooking appliances, we own Jade Range, a leading manufacturer of premium-priced commercial ranges and commercial-style ranges for the residential market

We make significant annual capital investments in product development striving for innovative features in our strongest brands Superior product performance reinforces brand positioning; product and brand positioning drive sales and distribution

We operate in two business segments: Home Appliances and Commercial Products During 2005, two of our customers, Sears, Roebuck and Co. (Sears) and Kmart merged to form Sears Holdings Company Sales to Sears Holdings in 2005 represented 10% of consolidated net sales. Sales to Sears, excluding Kmart represented 13% and 15% of consolidated net sales in 2004 and 2003 respectively. Sales to Home Depot represented 14% and 10% of consolidated net sales in 2005 and 2004, respectively Financial and other information relating to these reportable business segments is included in Part II Items 7 and 8

### Pending Transaction

On August 22, 2005, we entered into a definitive merger agreement with Whirlpool Corporation ("Whirlpool"), which provides that, upon completion of the merger of a subsidiary of Whirlpool into Maytag, each share of Maytag common stock outstanding will be converted into the right to receive (i) $10 50 in cash and (ii) between 0.1144 and 0.1398 of a share of Whirlpool common stock. The amount of Whirlpool common stock to be issued in exchange for each Maytag share will depend upon the volume-weighted average trading price of Whirlpool's common stock during a 20 trading-day period ending shortly before the merger Our stockholders will receive 0.1144 of a share of Whirlpool common stock if the average Whirlpool common stock price is greater than $91.7937 or 0.1398 if it is less than $75.1039; between the two prices, the exchange ratio will vary proportionately

In anticipation of signing the Whirlpool merger agreement, we terminated the prior merger agreement with Triton Acquisition Holding Company ("Triton") and paid a $40 million termination fee to Triton As part of the agreement with Whirlpool, we were reimbursed for the $40 million termination fee. In the merger agreement, Whirlpool has agreed to provide us with up to $15 million for retention of our employees and has agreed to pay a "reverse break-up fee" of $120 million if the merger cannot be completed due to an inability to obtain regulatory approval as well as certain other conditions being met

For additional and more detailed information on the transaction with Whirlpool, please refer to the proxy statement dated November 21, 2005, filed by Maytag with the SEC. The registration statement contains a document that constitutes both a prospectus of Whirlpool relating to the shares of Whirlpool common stock to be distributed in the merger, and a proxy statement provided to our stockholders in connection with the special meeting of stockholders of Maytag held on December 22, 2005 with respect to the proposed merger. Our stockholders approved the proposed merger at the special meeting

1